## ANDERSON v. WEISER.

1. **Contract:** NEED NOT BE READ OVER: INSTRUCTION TENDING TO MISLEAD. The defendant in an action claimed, that the subject in controversy was covered by the terms of a written contract. The court instructed, that if the "writing, executed at the time of the contract, was read over to the plaintiff, and he understood and accepted it, then the parties are bound by its terms as fixing their rights," etc. *Held,* that the instruction had a tendency to mislead, because the jury might infer therefrom, that if the writing was not read over to plaintiff, though understood by him, it would not have the binding force to which it would otherwise be entitled.

2. —— PAROL EVIDENCE. Parol evidence is not admissible to change or vary the terms of a written contract. In the absence of fraud or mistake, the writing must be accepted as the authoritative evidence of the agreement.

3. **Principal and agent:** PURCHASE OF REAL ESTATE. The relation of principal and agent does not necessarily exclude the latter from reaping, in the purchase of certain real estate for his principal, the benefit of a contract with the principal wherein he stipulates to pay the agent a given sum for the land, whatever it may cost the latter.

Anderson v. Weiser.

*Appeal from Winnesheik District Court.*

MONDAY, MAY 11.

THE substance of plaintiff's case, as shown by his petition, is this: In June, 1865, he employed defendant as his agent, to purchase for him a tract of land of a party residing in Pennsylvania, the land being in Winnesheik county, in this State, where the parties resided. He authorized him to pay as high as six dollars per acre, paying thereon at the time $200; defendant, notwithstanding the obligation thus imposed, disregarded the same, purchased the land for $284; represented that he was compelled to, and did pay $480, and plaintiff, confiding in this representation, paid this last sum, and expenses, and a commission of ten dollars for said defendant's services; wherefore, etc.

The claim is to recover the difference between the amount actually paid by defendant and the sum which he thus wrongfully induced and compelled plaintiff to pay.

The answer is in denial, and further sets up, that defendant was to purchase the land and sell the same to plaintiff for $480; if it exceeded eighty acres, plaintiff was to pay six dollars per acre for the excess, $200 to be paid at the time, $100 December 25, 1865, and the balance in one year, with ten per cent on the deferred payments; that if the land could not be obtained, the agreement was to be void; that, pursuant to this agreement, defendant purchased the land and conveyed the same to plaintiff, and that upon this agreement, and none other, was the land sold and conveyed.

Trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.

*G. R. Willett* for the appellant.

*Clark & Bullis* for the appellee.

WRIGHT, J. — The errors assigned relate to the action of the court in giving and refusing certain instructions, and in overruling the motion for a new trial. Under the last head it is insisted, that the verdict is against law and evidence.

To the proper understanding of the case, a most material item of evidence is the following written agreement, which the defendant relies on as the sole and exclusive evidence of the contract between the parties:

"Received, Decorah, June 23, 1865, of Aaron Anderson $200, which is toward paying for [describing the land], for which he is to pay me $480; and if there should be more than eighty acres, he to pay for the increase at the rate of six dollars per acre; $200 down, as above, which he pays now, $100 December 25, 1865, and balance one year from date, with ten per cent on deferred payments; he to pay for all revenue stamps and all expenses which may be incurred about the business. In case we fail to get the deed for the above land, then this receipt is to be null and void and of no effect.

"H. S. WEISER & CO."

It is admitted that defendant had no partner, and that H. S. Weiser alone transacted business by this firm name.

There is no claim, nor could there well be, that this instrument is to be treated as a mere receipt, and there-
**1. CONTRACT:** fore open to evidence to explain or contradict
need not be its terms, containing, as it does, terms and con-
read over:
instruction. ditions. Being in fact an agreement or contract between the parties, it is no more to be affected by extrinsic evidence than if nothing was said in it about the receipt of the $200. This rule was clearly recognized

Anderson v. Weiser.

in the court below, for the jury were told — assuming that the writing was read over to plaintiff and he understood it — that the parties would be bound by it as fixing their rights and liabilities, and the law will treat it as containing all there was of the contract. And yet we cannot resist the conclusion, that the court below failed to give and explain to the jury the full force and effect of this instrument. It is but too apparent that they were left to go into the whole field of evidence, whatever might be their opinion as to the binding force or effect of the agreement. Thus they are told, as above shown, that if the " writing, executed at the time of the contract, was read over to the plaintiff and he understood and accepted it, then the parties are bound by its terms as fixing their rights," etc. But in no other or different manner or language was its binding effect explained. Now there is no question under the evidence as to its acceptance. But while the converse of the proposition is not stated, the jury could well infer, that if the writing was not read over to plaintiff, though he understood it, it would not have the binding force to which it would otherwise be entitled. And yet, suppose the terms were well understood between the parties, and this writing correctly expressed their contract, there could be no question as to its binding effect. Or suppose it was correctly explained to him, though not read to him at the time (he was illiterate and could not read), it would certainly be equally binding. Or suppose again he did not understand its terms, yet it in fact contained their contract: the jury ought not to have been left to disregard it and decide the case upon testimony, which was in conflict with its terms and provisions.

As a writing it speaks for itself. In the absence of fraud or mistake, it must be accepted as the authoritative evidence of the contract. If defendant, because of his

Anderson v. Weiser.

2. —— parol     superior sagacity, or because of a special con-
evidence.       fidence reposed in him by plaintiff, obtained
the contract by fraud and misrepresentation, then it would
not be binding.    But if not thus impeached, all evidence
to change or alter, or in conflict with its terms, would of
course be inadmissible, and the plaintiff must be judged
by, and defendant held to, these — nothing more, nothing
less.  The rule is a wise and salutary one — a rule, too,
which should be clearly given to a jury in all such cases,
that they may not, as they are often too apt to, treat mere
conversations and preliminary negotiations as of equal
dignity and force with the contract in writing itself.

But an error of even more practical importance in this
case was the refusal to give defendant's first instruction.

3. PRINCIPAL     The substance of this was, that though defend-
AND AGENT:       ant was plaintiff's agent, it would not neces-
purchase of
real estate.     sarily follow that plaintiff should take all the
benefit of the purchase ; that it was plaintiff's right to
stipulate that he would pay a given sum for the land,
whatever its cost to defendant, and that if such contract
was made it was immaterial at what price the defendant
purchased.  If plaintiff's theory is true, that defendant
was to purchase the land for him, and that he was to pay
no more than defendant, as his agent, paid, then, of
course, if defendant misrepresented the amount paid, and
by his fraud induced plaintiff to pay more than the true
amount, there would be no question as to his right
to recover this excess.  For the law will not permit
the agent to thus make profit to himself.  The mere
authority to pay as high as six dollars per acre would not
entitle defendant to more than he actually paid, if less
than this.  The amount thus saved would be the plaint-
iff's, and defendant would have no right to claim the
maximum amount which he was by such agreement per-
mitted to pay for the land.  And yet, though plaintiff

Anderson v. Weiser.

constituted defendant his agent to procure this land, it was perfectly competent for him to agree to pay him a specified sum if he obtained it, and defendant would be free to make the best bargain he could, without liability to account for the profit thus made. This, of course, is upon the hypothesis that the contract was not tainted with fraud.

In such a case the agent would not be the buyer and seller, in the sense that, because of imcompatability of interest, the transaction would be held invalid. He becomes the seller, and the purchaser, contracting with a knowledge of the facts, cannot insist upon the application of the rule that the agent purchased for his principal, and therefore such principal is to have the profit resulting from such purchase. It is true, that he might be held to the fulfillment of his contract and treated as a trustee holding for the benefit of his employer. But not to the extent of saying, that plaintiff would not be concluded by a contract fairly entered into, to pay a specific sum for the land.

It would seem to be a misuse of terms and ideas to apply the principles applicable and well understood between principal and agent to a case of the kind supposed. For, according to the theory of the instruction under consideration, the defendant would not be buying for plaintiff, but for himself, to enable him to execute a contract to convey. Plaintiff says, in effect, instead of undertaking to buy this land from the present owner, you get it and I will pay you so much. Now in this there is nothing necessarily unfair, nor unusual. For the defendant's trouble, for his superior opportunities, whether from acquaintance with the owner or otherwise, or from whatever consideration — he undertakes to pay so much, and it would certainly be extraordinary, if under such circumstances the defendant would be so fully plaintiff's agent as that he might not negotiate on his own terms for the

land and be entitled to the full sum thus agreed to be paid. Then again, plaintiff sought to avoid the effect of the written agreement. What were the actual terms of the contract, was attempted to be shown by extrinsic evidence. The parties differed widely as to what were these terms, defendant testifying and introducing other evidence tending to show that he sold the land to plaintiff, and that he was to pay for it in precise accordance with the agreement afterward reduced to writing. In this state of case, if the jury found that the written contract was not binding, the instruction in question was proper, as giving the correct rule upon the defendant's theory of the transaction. For, while the jury were told what to do if they found the written agreement to be binding, they were left entirely unadvised touching defendant's rights or liabilities, if the agreement, upon the assumption that it existed in parol only, was as defendant claimed it to be.

These views render it unnecessary to consider whether the verdict was sustained by the evidence.

Because of the errors above pointed out, the judgment below is

Reversed.